UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————
ELIZABETH MCROBIE, on behalf of
herself and all others similarly situated,    :
                    Plaintiff,    :
                                 :
           v.    :           No. 5:18-cv-00566
                                 :
CREDIT PROTECTION ASSOCIATION,    :
               Defendant.    :
———————————————————————

**O P I N I O N**
**Defendant's Motion for Summary Judgment as to Counts I and II—DENIED**
**Plaintiff's Partial Motion for Summary Judgment as to Count II, only—GRANTED**

**Joseph F. Leeson, Jr.**                            **March 11, 2020**
**United States District Judge**

I.    **INTRODUCTION**

This is a class action[1] commenced for the alleged violation of several provisions of the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("the FDCPA").  Plaintiff Elizabeth

McRobie, an alleged debtor, contends that a mailer she received from Defendant Credit

Protection Association ("CPA"), a debt-collection agency, violated the FDCPA both in the

mailer's form and substance.  Count I of McRobie's Amended Complaint asserts that the mailer

is a "post card" in violation of 15 U.S.C. § 1692f(7), which prohibits "[c]ommunication with a

consumer regarding a debt by post card."  *See* Plaintiff's Amended Complaint ("Am. Compl.")

[ECF No. 38] ¶¶ 42-45.  Count II of the Amended Complaint asserts that the mailer unlawfully

displayed a numerical code on its exterior, in violation of 15 U.S.C. § 1692f(8), which prohibits

---

[1]    Class certification was granted only as to Count II of the Amended Complaint.  *See* ECF
No. 43.

use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails."² *See id.* ¶¶ 46-49.

Discovery has concluded, and both parties have cross-filed for summary judgment. McRobie moves for summary judgment only as to Count II of the Amended Complaint, *see* ECF No. 57, while CPA moves for summary judgment as to both Counts I and II, *see* ECF No. 59. For the reasons set forth below, CPA's motion for summary judgment is denied as to both Counts I and II of the Amended Complaint, and McRobie's motion for summary judgment as to Count II of the Amended Complaint is granted.

## II.    BACKGROUND

### A.    The Undisputed Material Facts³

CPA is a third-party collection agency that collects past-due consumer debt on behalf of the telecommunications, tolling, and utilities industries.  Plaintiff's Statement of Undisputed Material Facts ("Pl.'s SOMF") [ECF No. 57-2] ¶ 2.  McRobie is an adult individual who allegedly incurred a financial obligation to MetroCast Communications ("MetroCast") in the amount of $52.84.  Defendant's Statement of Undisputed Material Facts ("Def.'s SOMF") [ECF No. 60] ¶ 1; Pl.'s SOMF ¶ 1.  This alleged debt was sent by MetroCast to CPA for collection. Pl.'s SOMF ¶ 3; Def.'s SOMF ¶ 2.

---

²      As initially proposed, the Amended Complaint asserted three causes of action.  As part of its review of McRobie's motion to amend her initial Complaint, the Court concluded Count III of the proposed Amended Complaint failed to assert a viable claim.  *See* ECF Nos. 36-37.

³      The Court draws the following facts from the parties' Statements of Undisputed Material Facts and responses thereto, and generally cites to these Statements rather than the underlying record.  The Court does not here recite factual assertions that are not undisputed, not material, not supported by proper citations to the record, or that are supported by citations to the record the substance of which does not actually provide support.  *See* FED. R. CIV. P. 56(c)(1); Leeson, J., Policies and Procedures §§ II(F)(7)-(8).

Thereafter, CPA forwarded a request to National Data Services, Inc. ("NDSI"), a vendor with whom CPA contracts to generate and mail communications attempting to collect debts like the communication sent to McRobie.  Def.'s SOMF ¶¶ 3, 6-7.  Under the vendor agreement between NDSI and CPA, NDSI prints, folds, and mails debt-collection communications upon the request of CPA, using templates created by CPA.  Def.'s SOMF ¶¶ 4, 8, 10; Pl.'s SOMF ¶¶ 5-6. The mailer sent to McRobie was, pursuant to the relevant CPA template, intended to consist of two "cards" glued together, with information pertaining to an individual's alleged debt contained on the inside of the two "cards" and out of public view.[4]  Def.'s SOMF ¶ 9; Plaintiff's Response to Defendant's SOMF ("Pl.'s Resp.") [ECF No. 71-2] ¶ 9.  Additionally, the CPA template for the "double card" mailer sent to McRobie has a fourteen-digit numerical sequence containing a six-digit "client code" or "client number" on the exterior of the mailer.  Def.'s SOMF ¶ 11; Pl.'s SOMF ¶ 9.  This number represents the original creditor associated with the specific debt that a given mailer is attempting to collect.  Pl.'s SOMF ¶ 10.  The number does not, on its face, communicate anything with respect to an alleged debtor in particular (for example, a debtor's

---

[4]     CPA calls this type of mailer a "double card" and asserts that NDSI placed the appropriate "double card" mailer into the mail for McRobie.  *See* Def.'s SOMF ¶ 12.  McRobie states that she only received one of the two "cards" that CPA claims comprised the mailer.  *See* Pl.'s Resp. ¶ 12.  Although she is not moving for summary judgment as to Count I of the Amended Complaint, in response to CPA's motion for summary judgment on this count, McRobie points to what she claims is the absence of evidence in the record that NDSI placed her particular mailer in the mail in the manner in which it was supposed to—as a "double card" mailer.  *See id.*  As a result, she claims her mailer was an unlawful "post card" in violation of 15 U.S.C. § 1692f(7) because it consisted of only a single "card" with information regarding her debt visible to the public.  *See* Plaintiff's Memorandum in Opposition to CPA's Motion for Summary Judgment ("Pl.'s Opp'n.") [ECF 71] at 12-14.

McRobie does not dispute that under the vendor agreement between CPA and NDSI, and according to the CPA template for the mailer sent to McRobie, the mailer was *supposed to be* a "double card" mailer.  *See* Pl.'s Resp. ¶ 9.

account with the creditor).[5]  Def.'s SOMF ¶¶ 38-39.  To access the underlying information represented by the client number—the identity of a particular creditor—an individual would have to have access to CPA's internal list of client codes.[6]  Def.'s SOMF ¶ 38.

Following CPA's request, NDSI generated the mailer that was sent to McRobie from a template created by CPA for collection communications specific to MetroCast debts.  Def.'s SOMF ¶¶ 4, 10; Pl.'s SOMF ¶¶ 5-6.  The exterior of the mailer that was sent to and received by McRobie appears as follows:



---

[5]     McRobie states that whether the client number communicates anything to a third party "in a vacuum" is "immaterial."  Pl.'s Resp. ¶ 38.  For reasons discussed below, the Court disagrees with this characterization and conclusion.  Moreover, McRobie does not state that she disputes this fact, nor does she cite to any portion of the record.  *See id.*  The Court therefore accepts the fact as undisputed.  *See* FED. R. CIV. P. 56(c).  Additionally, McRobie purports to dispute that the client number does not correlate specifically to a debtor's account by stating that the client number "correlates to the creditor associated with" a debtor's account.  *See* Pl.'s Resp. ¶ 39.  McRobie's contention here does not confront the fact that the number does not link to a specific account; it therefore cannot accurately be characterized as a genuine "dispute."

[6]     The Court refers to its discussion in the preceding footnote as to McRobie's failure to dispute the facts contained in Def.'s SOMF ¶ 38.

Pl.'s SOMF ¶ 8.  The exterior of the mailer displays the "client code" or "client number" in the

lower left-hand corner, which in McRobie's case is associated with MetroCast, the original

creditor on her alleged debt.  *Id*. ¶¶ 9-10.

      **B.**     **Procedural Background**

McRobie filed the initial Complaint in this action on February 2, 2018, in which she

asserted a single cause of action for violation of 15 U.S.C. § 1692f(7).  *See* ECF No. 1.  CPA

Answered the Complaint on or about April 9, 2018, following a stipulated extension of time to

do so.  *See* ECF No. 6.  Counsel appeared before the Undersigned for a Rule 16 conference on

May 31, 2018, at which time a discovery schedule was put into place.  *See* ECF Nos. 9-10.  On

August 29, 2018, McRobie filed a motion to amend her Complaint based upon information

obtained during the course of discovery, *see* ECF No. 22, and several days thereafter, on

September 4, 2018, she filed a motion for class certification, *see* ECF No. 23.  Both  motions

were opposed by CPA.  *See* ECF Nos. 26, 32.

On October 30, 2018, this Court issued an Opinion granting, in part, McRobie's motion

to amend her Complaint.  *See* ECF No. 36.  The Court allowed her to plead a claim of violation

of 15 U.S.C. § 1692f(8) (Count II); however, the Court denied her attempt to plead a claim of

violation of 15 U.S.C. § 1692e(9) (proposed Count III), finding her proposed cause of action

failed to state a viable claim for relief.  *See id.*

On April 3, 2019, the Court granted McRobie's motion for class certification, certifying a

class consisting of "[a]ll natural persons residing in Pennsylvania, New Jersey and Delaware to

whom Defendant CPA mailed a postcard, substantially similar to the Postcard sent to Plaintiff, in

an attempt to collect a debt, where the postcard was not returned as undeliverable."  ECF No. 43.

The Court only certified this class as to Count II of the Amended Complaint.  *See id.*

Following extensions of time to complete discovery and file dispositive motions, the

instant summary judgment motions and related papers were filed between November 4, and

December 4, 2019.  *See* ECF Nos. 57-76.

## III.   LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party bears the initial burden of

establishing that no genuine issue of material fact exists.  *Bacon v. Avis Budget Grp., Inc.*, 357 F.

Supp. 3d 401, 412-13 (D.N.J. 2018).  In determining if the moving party has satisfied this

burden, the Court is obliged to construe all facts and factual inferences in the light most

favorable to the non-moving party.  *See United States ex rel. Simpson v. Bayer Corp.*, 376 F.

Supp. 3d 392, 401 (D.N.J. 2019); *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir.

1998).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . .

the burden on the moving party may be discharged by 'showing'—that is, pointing out to the

district court—that there is an absence of evidence to support the nonmoving party's case."

*Bacon*, 357 F. Supp. 3d at 413 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Where the movant shows a *prima facie* entitlement to summary judgment, the burden

shifts to the non-movant to point to record evidence creating a genuine issue of material fact.

*See* FED. R. CIV. P. 56(e); *Davis v. Quaker Valley Sch. Dist.*, No. 13-1329, 2016 WL 912297, at

*8 (W.D. Pa. Mar. 10, 2016), *aff'd*, 693 F. App'x 131 (3d Cir. 2017).  "[T]he non-moving party

may not merely deny the allegations in the moving party's pleadings; instead he must show

where in the record there exists a genuine dispute over a material fact."  *Gibson-Reid v.*

*Lendmark Fin. Servs., LLC*, No. 2:19-CV-02859, 2019 WL 4139034, at *1 (E.D. Pa. Aug. 30, 2019) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)); *see Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").  Summary judgment is mandated where a non-moving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . [T]here can be 'no genuine issue of material fact'" where "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).[7]

## IV.   THE CONTENTIONS OF THE PARTIES

McRobie moves for summary judgment as to Count II of the Amended Complaint based on the contention that the "client number" displayed on the exterior of the mailer she received from CPA is a per se violation of 15 U.S.C. § 1692f(8).  *See generally* Plaintiff's Memorandum in Support of her Motion for Summary Judgment ("Pl.'s Mem.") [ECF No. 57-1].  Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," and § 1692f(8) defines "unfair or unconscionable means" to include "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails."  15 U.S.C. § 1692f(8).  McRobie argues that the "client number" on CPA's mailer falls squarely within § 1692f(8)'s prohibition.  *See* Pl.'s Mem. at 8-10.  She further

---

[7]     This "standard does not change when the issue is presented in the context of cross-motions for summary judgment."  *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)).  Where parties cross move, the Court "must consider the motions independently, in accordance with the principles outlined above."  *Bacon*, 357 F. Supp. 3d at 413.

contends, and elaborates in her memorandum in opposition to CPA's motion, that there is no "benign language exception" to § 1692f(8)'s prohibition, and even if there were, CPA's disclosure was not "benign."  *See id.* at 9-10.  McRobie additionally claims that in its decision on McRobie's motion to amend, this Court ruled that CPA's mailer (1) violates §  1692f(8) and further (2) cannot claim the benefit of a "benign language exception" because none has been recognized in this Circuit.  *See* Pl.'s Opp'n. at 9-11.

CPA moves for summary judgment as to both Counts I and II of the Amended Complaint on several grounds.  First, CPA contends that McRobie lacks standing to assert a claim for violation of either 15 U.S.C. §§ 1692f(7) or 1692f(8).  *See* Defendant's Memorandum in Support of its Motion for Summary Judgment ("Def.'s Mem.") [ECF No. 61] at 8-10.  Specifically, CPA argues that there is no evidence that a third party ever saw the mailer sent to McRobie or any of the information contained in it, nor is there any evidence that McRobie suffered any out-of-pocket expenses as a consequence of receiving CPA's letter.  *See id.*  According to CPA, as a result, McRobbie cannot claim to have suffered an injury-in-fact sufficiently concrete to confer Article III standing.  *See id.*  As to the specific causes of action McRobie asserts, CPA contends that its mailer is not a "post card" as prohibited by 15 U.S.C. § 1692f(7), because, according to CPA, the mailer was a "double card" as defined by the U.S. Postal Service.  *See id.* at 10-12.  To the extent the mailer came apart in transit thereby transmitting McRobie's personal information, CPA argues it is entitled to the "bone fide error" defense.  *See id.* at 12-15.  Finally, CPA argues that under the "benign language exception" to § 1692f(8)'s prohibition, which it persuades this Court to adopt, the "client number" on the exterior of McRobie's mailer does not violate § 1692f(8)'s prohibition because the information is meaningless to third parties and does not reveal any of McRobie's personal information.  *See id.* at 16-22.

## V.     DISCUSSION

### A.     Threshold Inquiries

CPA's argument that McRobie lacks standing to pursue her claims, and McRobie's argument that this Court has already ruled that the mailer violates the FDCPA, require preliminary treatment.  "Standing to sue is required for jurisdiction in a federal forum," and, as a result, "is the threshold inquiry in every case."  *Hassan v. City of New York*, 804 F.3d 277, 289 (3d Cir. 2015), *as amended* (Feb. 2, 2016).  Similarly, the "law of the case doctrine"—which is applicable to the issue of whether this Court has already ruled that the "client number" violates 15 U.S.C. § 1692f(8)—is appropriately addressed at the outset.  *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 134 (3d Cir. 2001) (addressing an issue of preclusion "[a]s a threshold matter").

### 1.     Article III Standing[8]

Article III, § 2 of the United States Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies."  U.S. CONST. art. III, § 2.  As the Supreme Court has stated, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Allen v.*

---

[8]     It is important to note that the Court's analysis as to McRobie's standing is distinct from its analysis as to the merits of her claims in light of the undisputed factual record.  *See Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015); *Warth v. Seldin,* 422 U.S. 490, 500 (1975) (explaining that standing "often turns on the nature and source of the claim asserted," but it "in no way depends on the merits" of the claim); *see also DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 280 (3d Cir. 2019) (addressing the issue of standing in the context of 15 U.S.C. § 1692f(8) first on appeal of grant of summary judgment for plaintiff, and stating the following once standing had been established:  "[s]atisfied that DiNaples has standing, we now consider whether the District Court correctly determined that she had a successful claim under the FDCPA").

*Wright,* 468 U.S. 737, 751 (1984)); *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)

("Standing is a jurisdictional matter. 'Absent Article III standing, a federal court does not have

subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.'" (quoting

*Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006))).  Over the years,

federal jurisprudence has

> established that the irreducible constitutional minimum of standing contains three
> elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of
> a legally protected interest which is (a) concrete and particularized, and (b) actual
> or imminent, not conjectural or hypothetical.   Second, there must be a causal
> connection between the injury and the conduct complained of—the injury has to be
> fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e]
> result [of] the independent action of some third party not before the court.  Third,
> it must be "likely," as opposed to merely "speculative," that the injury will be
> redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal quotations and citations omitted).  Because these elements

are not mere pleading requirements but rather jurisdictional prerequisites, "each element must be

supported in the same way as any other matter on which the plaintiff bears the burden of proof,

*i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."

*Id.* at 561.

The Supreme Court's 2016 decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as

revised* (May 24, 2016), a case brought under the Fair Credit Reporting Act, bears heavily on the

instant analysis for what the Court said regarding the ability to claim an *intangible* injury as the

basis for standing.  As the Third Circuit recently observed, the Supreme Court in *Spokeo*

"highlighted that there are two elements that must be established to prove an injury in fact—

concreteness and particularization"; however, the Supreme Court "rejected the argument that an

injury must be 'tangible' in order to be 'concrete.'"  *In re Horizon Healthcare Servs. Inc. Data

Breach Litig.*, 846 F.3d 625, 637 (3d Cir. 2017) (citing *Spokeo*, 136 S. Ct. at 1545, 1549).  The

Court in *Spokeo* "explained that 'both history and the judgment of Congress play important roles' in determining whether 'an intangible injury constitutes injury in fact.'"  *In re Horizon*, 846 F.3d at 637 (quoting *Spokeo*, 136 S. Ct. at 1549).  Thus, *Spokeo* teaches that an intangible harm can satisfy the injury-in-fact requirement of Article III if the "'alleged intangible harm' is closely related 'to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts,'" *In re Horizon*, 846 F.3d at 637 (quoting *Spokeo*, 136 S. Ct. at 1549), as well as if the alleged intangible harm has been elevated by Congress "to the status of [a] legally cognizable injur[y],"[9] *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578).

Where a plaintiff claims standing based upon a congressionally-elevated intangible harm—the circumstances of McRobie's suit under the FDCPA—a court must "ask[ ] whether Congress has expressed an intent to make an injury redressable."  *In re Horizon*, 846 F.3d at 637. Importantly, "congressional power to elevate intangible harms into concrete injuries is not without limits. A 'bare procedural violation, divorced from any concrete harm,' is not enough."[10] *Id*. (quoting *Spokeo*, 136 S. Ct. at 1549).  On the other hand, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress

---

[9]      Where Congress chooses to elevate an intangible harm to the status of a legally cognizable injury, it might do so by itself looking to history.  *See, e.g.*, *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc*., 898 F.3d 351, 357-57 (3d Cir. 2018) (explaining that disclosure of certain debtor information violates the FDCPA because it "implicates a core concern animating the FDCPA—the invasion of privacy—and this is closely related to harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts") (internal quotation marks omitted).

[10]     The Supreme Court in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009) explained that "[d]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.  Only a person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy."  *Id.* at 496 (quotation omitted) (emphasis in original).

has identified." *Spokeo*, 136 S. Ct. at 1549 (emphasis in original).  In such circumstances, "a procedural right protects a concrete interest," and "a violation of that right may create a sufficient 'risk of real harm' to the underlying interest to 'satisfy the requirement of concreteness.'" *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 111 (3d Cir. 2019) (quoting *Spokeo*, 136 S. Ct. at 1549).

Here, CPA contends that based upon "the entire record, the evidence shows that Plaintiff did not incur any concrete injury-in-fact."  Def.'s Mem. at 9.  According to CPA, the record evidence shows that (1) the mailer received by McRobie was initially mailed out as a "double card," (2) when she received it she did not know what the "client number" signified, (3) the number did not convey any of her personal information, and (4) McRobie did not have any out-of-pocket expenses as a result of receiving the mailer and only claims to have experienced "anger." *Id.* at 10; *see id* at 9-10.  Based on these facts, CPA claims McRobie lacks standing to sue. *See id* at 9-10.  However, in the Court's view, and as McRobie points out, CPA's position is inconsistent with several recent Third Circuit decisions addressing the principles of *Spokeo* as they pertain to claims of intangible harm resulting from alleged FDCPA violations.

In *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351 (3d Cir. 2018), the Third Circuit addressed whether the alleged injury caused by the display of a "quick response" code and "account number" through a glassine window of an envelope containing a debt-collection letter was sufficient to confer standing.  Relying largely on the reasoning of *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014), a decision in which the Third Circuit held that display of debtor "account numbers" was prohibited by 15 U.S.C. § 1692f(8), the Court reaffirmed that the exposure of a debtor's account number "'implicates a core concern animating the FDCPA—the invasion of privacy'—and this is closely related to harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts."

*St. Pierre*, 898 F.3d at 357-58 (quoting *Douglass*, 765 F.3d at 303 and citing *Spokeo*, 136 S. Ct. at 1549).  The Third Circuit therefore affirmed the District Court's conclusion "that a violation of § 1692f(8)"—which display of the account number constituted— "is a legally cognizable injury that confers standing."  *St. Pierre*, 898 F.3d at 358.

Building on *Douglass* and *St Pierre*, the Third Circuit very recently held in *DiNaples v. MRS BPO, LLC*, 934 F.3d 275 (3d Cir. 2019), that display of a "quick response" code *alone* on the front of an envelope containing a debt-collection letter—that is, without simultaneous display of an account number, but which, when scanned, would reveal a debtor's account number—was sufficient to confer standing.  The Court concluded that although the injury resulting from this display was intangible, "the reasoning of [*St. Pierre and Douglass*] inevitably dictates that [the alleged debtor had] suffered a concrete injury" because "[d]isclosure of the debtor's account number through a QR code, which anyone could easily scan and read, still 'implicates core privacy concerns.'"  *DiNaples*, 934 F.3d at 280 (quoting *Douglass*, 765 F.3d at 304).  The Court concluded its discussion of standing as follows:  "because the disclosure is the concrete harm here, DiNaples 'need not allege any additional harm beyond the one Congress has identified.' Her evidence that she received an envelope with a QR code containing private information was enough to establish a concrete injury."  *DiNaples*, 934 F.3d at 280 (quoting *Spokeo*, 136 S. Ct. at 1549).[11]

In the Court's view, the reasoning of *Douglass*, *St. Pierre*, and *DiNaples* "inevitably dictates that [McRobie] has suffered a concrete injury."  *DiNaples*, 934 F.3d at 280.  Both of

---

[11]      Like the posture of McRobie's suit, *DiNapoli* involved a disposition on motions for summary judgment.

McRobie's claims, whether for violation of § 1692f(7) or § 1692f(8) of the FDCPA, allege harm that, intangible as it may be, is sufficient to confer standing.[12]

As to her claim of violation of 15 U.S.C. § 1692f(8), although the "client number" on the exterior of the mailer received by McRobie corresponds to CPA's client, MetroCast, rather than to McRobie's allegedly past-due "account" with MetroCast, the number has the potential to "implicate[ ] a core concern animating the FDCPA—the invasion of privacy," because it displays "information relating to the debt collection" that is "susceptible to privacy intrusions." *Douglass*, 765 F.3d at 303.  The "information relating to the debt collection" in this context is the identity of McRobie's creditor, MetroCast.  Although, similar to the circumstances in *DiNaples*, an additional step is required to access the underlying information—*i.e.*, input of the information into a separate system—it is still the case that a portion of the means to access the underlying information has been made public.

Similarly, McRobie's allegations in support of her claim of violation of 15 U.S.C. § 1692f(7)—that the mailer was actually an unlawful "post card" because as received it consisted of only a single "card," *see* Pl.'s Resp. ¶ 12—also implicate core privacy concerns, the implication of which is sufficient to confer standing.  *See Douglass*, 765 F.3d at 302 (explaining that § 1692f(7) "evinces Congress's intent to screen from public view information pertinent to debt collection").

---

[12]    Because the Court finds that McRobie's claimed intangible harm is sufficient to confer standing, it does not address whether her claim that "she was angry and upset when she received the opened" mailer from CPA is sufficiently tangible to also confer standing.  Plaintiff's Memorandum in Reply ("Pl.'s Reply") [ECF No. 75] at 5-6.

To sum up the standing analysis, McRobie has alleged—and the record evidence supports[13]—the disclosure of information related to debt collection.  This disclosure "implicates a core concern animating the FDCPA—the invasion of privacy," *Douglass*, 765 F.3d at 303, and as such it is itself a "concrete harm"; McRobie "need not allege any <u>additional</u> harm beyond the one Congress has identified."  *DiNaples*, 934 F.3d at 280 (emphasis in original) (quoting *Spokeo*, 136 S. Ct. at 1549).  Consequently, notwithstanding the intangible nature of the harm she identifies, McRobie has standing to sue,[14] and the Court has jurisdiction to engage in an inquiry as to the merits of her claims in light of the undisputed factual record.

### 2.     The "Law of the Case" Doctrine

Having determined that McRobie has standing to pursue her claims (and this Court has jurisdiction to adjudicate them as a result), the Court must next address McRobie's argument that it has already found CPA's mailer to violate 15 U.S.C. § 1692f(8).  She contends that in ruling on her motion to amend the initial Complaint, the Court settled this issue when it stated that "[b]ecause the mailer Defendant used includes language or a symbol other than the debt collector's address, it clearly violates the plain language of § 1692f(8)."  ECF No. 36 at 8.  The

---

[13]     At the pleadings stage, the Court presumes the existence of a viable cause of action when determining whether a plaintiff has established standing; "[i]n response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken as true."  *Lujan*, 504 U.S. 561 (quoting FED. R. CIV. P. 56(e)).  Here, McRobie's allegations of intangible harm are supported by record evidence:  the exterior of CPA's mailer displays a "client number," and McRobie testified to receiving CPA's mailer as a single, rather than a "double card."

[14]     Additionally, because McRobie has established standing, the class members also have standing.  *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018) ("[P]utative class members need not establish Article III standing.  Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class." (quoting  *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015))).

Court's Opinion on McRobie's motion to amend went on to explain that "although the numeric code may be meaningless to a third party, it relates intimately to the recipient's status as a debtor by specifying the creditor to whom the recipient owes money."  *Id*. at 10.  The Court also observed that there was no "benign language" exception in the Third Circuit and expressed its doubt over whether CPA's "client number" would be covered by the exception even if it was applicable.  *See id.* at 9-11.  In contrast, CPA contends that McRobie's "claim that this Court already ruled that CPA violated the FDCPA mischaracterizes and overstates this Court's opinion on Plaintiff's motion to amend the complaint," which "only determined that the proposed amended complaint stated sufficient allegations to warrant an amendment, not that Plaintiff has won the case."  CPA's Memorandum in Opposition to McRobie's Motion for Summary Judgment ("Def.'s Opp'n.") [ECF No. 70] at 9.

While neither party identifies it by name, if any doctrine governs the resolution of this issue it is the "law of the case" doctrine.  "The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Wilson v. Hoerner*, No. CV 13-1529, 2017 WL 6539368, at *4 (W.D. Pa. Dec. 21, 2017) (quoting *Young v. Smith*, 2016 WL 3522965, at *10 (M.D. Pa. June 28, 2016)); *see Arizona v. California*, 460 U.S. 605, 618 (1983) ("Unlike the more precise requirements of res judicata, law of the case is an amorphous concept.  As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."), *decision supplemented*, 466 U.S. 144 (1984).  A key feature of the doctrine, however, is its inapplicability to preliminary or tentative rulings.  *See Wilson*, 2017 WL 6539368, at *4 (explaining that the law of the case doctrine "is not applicable to preliminary motions to dismiss"); *Lichtenstein v. Lower*

*Merion Sch. Dist.*, 316 F. Supp. 3d 855, 866 (E.D. Pa. 2018) ("In no way did the Court's ruling as to the sufficiency of Plaintiff's allegations foreclose this Court, pursuant to the 'law of the case doctrine' or otherwise, from viewing the undisputed facts at the summary judgment stage to determine whether, with the benefit of discovery and a distinct legal standard, Plaintiff has failed to meet his burden as a matter of law."); *cf. Boyington v. Percheron Field Servs., LLC*, No. 3:14-CV-90, 2017 WL 5197159, at *7 (W.D. Pa. Nov. 8, 2017); *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999) ("[T]he law of the case doctrine bars courts from reconsidering matters actually decided[;] it does not prohibit courts from revisiting matters that are 'avowedly preliminary or tentative.'" (quoting Wright & Miller, § 4478, at 798)).

The findings and rulings that are at issue here were made in adjudicating McRobie's motion to amend pursuant to Federal Rule of Civil Procedure 15, and specifically as part of a futility analysis. *See* ECF No. 36 at 8. A motion to amend need not be granted where the proposed claims are futile, with "futility" in this context meaning that "the complaint, as amended, would fail to state a claim upon which relief could be granted"—"the same standard of legal sufficiency as applies under Fed. R. Civ. P. 12(b)(6)." *Wheelings v. Seatrade Groningen, BV*, 516 F. Supp. 2d 488, 496 (E.D. Pa. 2007) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997)). Because the findings and rulings by which McRobie attempts to bind the Court were made as part of the Court's Rule 15 "futility" analysis, they are necessarily "preliminary" in nature: the Court's determinations were based on the allegations in the proposed Amended Complaint, which was reviewed under the same standard as a Rule 12(b)(6) challenge to sufficiency.

Because these were not determinations on the ultimate question of liability, the Court's prior findings and rulings as to the viability of Count II of the Amended Complaint, as well as to

the availability of the benign language exception, do not constitute the "law of the case." [15]

Consequently, they do not bind the Court in its deciding the instant motions for summary

judgment.[16]

### B.    Whether McRobie or CPA is Entitled to Summary Judgment

With the threshold issues of jurisdiction and the effect of the Court's prior rulings settled,

the Court turns to whether the undisputed material facts warrant a grant of summary judgment

for McRobie, CPA, or neither,[17] on the Amended Complaint's two counts.[18]   The Court begins

with Count II, the claim on which both parties seek summary judgment.

### 1.    *Violation of 15 U.S.C. § 1692f(8) (Count II)*

Section 1692f of the FDCPA prohibits a debt collector from using "unfair or

unconscionable means to collect or attempt to collect any debt."   "Unfair or unconscionable" is

defined in § 1692f(8) as follows:  "[u]sing any language or symbol, other than the debt

---

[15]    Alternatively, one can think of the application of the "law of the case" doctrine to the instant circumstances in the following manner:  the "rule of law" that was decided in the Court's prior decision was that Count II of McRobie' proposed Amended Complaint stated a viable claim, while Count III did not.  If the doctrine is applicable, it militates that the Court maintain these rulings, such that, for example, if McRobie attempted to re-plead her Count III claim without new alleged facts, the Court would maintain its dismissal.

[16]    Even if these rulings were the "law of the case," the law of the case doctrine "directs a court's discretion, it does not limit the tribunal's power."  *Arizona*, 460 U.S. at 618.

[17]    "[T]he filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."  *Morningred v. Delta Family-Care & Survivorship Plan*, 790 F. Supp. 2d 177, 183 (D. Del. 2011), *clarified on denial of reconsideration* (June 30, 2011), *aff'd*, 526 F. App'x 217 (3d Cir. 2013).

[18]    "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (quoting  *Douglass v. Convergent Outsourcing,* 765 F.3d 299, 303 (3d Cir. 2014)).  Because the undisputed facts satisfy the first three elements of an FDCPA claim, *see* Pl.'s SOMF ¶¶ 1-4; Def.'s SOMF ¶¶ 1-2; *see also* 15 U.S.C. § 1692a(3), the Court's inquiry deals solely with the fourth element:  whether CPA's mailer violated a provision of the FDCPA.

collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."  15 U.S.C. § 1692f (8).

As in *Douglass v. Convergent Outsourcing*, *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, and *DiNaples v. MRS BPO, LLC*, CPA's "client number" is clearly prohibited under a strict reading of § 1692f(8).  In determining whether that is the end of the inquiry, the Court looks to *DiNaples*, the Third Circuit's most recent guidance[19] on how to approach purported violations of § 1692f(8).

As previously examined, in *DiNaples* the Third Circuit determined that a plaintiff-debtor had standing to sue where she suffered an intangible harm resulting from the display of a "QR" code on the outside of a debt-collection envelope that could be scanned to reveal the debtor's account number.  *See DiNaples*, 934 F.3d 275, 280 (3d Cir. 2019).  After satisfying itself that the plaintiff-debtor had standing, the Court in *DiNaples* reviewed the § 1692f(8) claim in light of the undisputed facts, ultimately affirming the District Court's grant of summary judgment in the plaintiff-debtor's favor.  *See id.* at 282.  In reaching this conclusion, the Court first observed that—as is the case with CPA's "client number" here—there could be "no dispute that [§ 1692f(8)] plainly prohibits the QR code."  *Id.* at 281.  However, the Court noted that when read literally, § 1692f(8) would also seemingly prohibit a number of innocuous markings related to mail, and even prohibit including a debtor's address and an envelope's pre-printed postage.  *Id.* In this context, the Court discussed whether a "benign language" exception to § 1692f(8)'s prohibition existed to save the defendant from liability.  Noting that it had not explicitly adopted such an exception to date, the *DiNaples* Court again deferred on addressing whether the

---

[19]    The decision in *DiNaples* was issued on August 12, 2019.

exception exists, but explained that even if it did, it would not save the defendant because the "QR" code, which linked directly to the plaintiff-debtor's account number, was not "benign." *Id.* at 282. The Court explained that "[i]f, as we held in [*Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014)], disclosure of a debtor's account number is an invasion of privacy, it follows that disclosure of a QR code embedded with that number is not benign." *DiNaples*, 934 F.3d at 282.

While *DiNaples* is informative in several ways, it left unaddressed the two questions that would likely be dispositive of the motions before the Court here: (1) whether the benign language exception exists in this Circuit; and (2) if it does, whether information of the nature of CPA's "client number" falls within its scope. Indeed, the *DiNaples* Court stated in a footnote the following: "[w]e do not consider whether a debt collector violates § 1692f(8) by including on an envelope a QR code that does not contain a consumer's account number," 934 F.3d at 282 n.4. These unaddressed circumstances present a seemingly analogous situation to those presented by CPA's "client number."

The two questions posited above are fundamentally intertwined: where courts have chosen to adopt and apply a benign language exception, they have done so precisely because the information that violates a strict construction of § 1692f(8)'s prohibition was of a benign nature, liability for which would produce an absurd result.[20] Where courts have deferred ruling on the existence of the exception—for example, in *Douglass* and *DiNaples*—they have done so because the information at issue was fundamentally not "benign." Therefore, to determine if a benign

---

[20]     *See, e.g.*, *Estate of Laboy v. Apex Asset Mgmt., LLC*, No. CV 18-10844, 2019 WL 1417249, at *3 (D.N.J. Mar. 29, 2019) ("[T]he Eastern District of Pennsylvania has applied the benign language exception to language and symbols that did not disclose private information.").

language exception is capable of saving CPA from liability under § 1692f(8), the Court must

determine whether CPA's "client number," and more importantly the information it represents, is

truly "benign." The best way to accomplish this is through a comparison of CPA's "client

number" and the "account numbers" addressed in *Douglass*, *St. Pierre*, and *DiNaples*.  There are

two distinctions between these forms of information that are immediately apparent to the Court.

First, while any individual can download an application on a smartphone and

immediately "scan" a "QR" code, thereby revealing its underlying information, *see DiNaples*,

934 F.3d at 278, the six-digit "client number" displayed on CPA's double-card mailers is not

susceptible to translation in the same manner.  There is no indication that any method equivalent

to a smartphone "scan"—an act any member of the public can undertake—can convert the client

number to its underlying information.  To the contrary, to access the information represented by

the client number requires access to CPA's internal list of client codes.  *See* Def.'s SOMF ¶ 38.

On this point it is worth noting that the Court in *DiNaples* found that there was no material

difference between "disclosing an account number directly on an envelope and doing so via QR

code" in large part based upon "the ubiquity of smartphones."  *DiNaples*, 934 F.3d at 282.  There

is no similar concern here.

The second distinction apparent to the Court concerns the nature of the information

encrypted in—or, more accurately for CPA's client number, represented by—the two figures.

The "QR" code at issue in *DiNaples* linked directly to an individual debtor's account number, an

undisputed "core piece of information pertaining to [an individual's] status as a debtor and [ ]

debt collection effort[s]."  *Douglass*, 765 F.3d at 303.  CPA's "client number," on the other hand,

represents a creditor—a standalone commercial entity.  *See* Def.'s SOMF ¶ 38.  Significantly, the

client number does not correspond to any particular debtor's account with that creditor, only the

creditor's identity.  *See id.* ¶ 39.  As a result, even if one were capable of translating the client number into its underlying information—which, again, would require access to CPA's internal client list—there is no indication that identity of the creditor alone, once revealed, would convey any information about a mailer recipient's status as a debtor to that entity.[21]

However, while the differences between a QR code that links to a debtor's account number and CPA's client number are not insignificant, in the Court's view, there *is* a significant distinction between CPA's client number and the markings that have been recognized by District Courts in this Circuit as subject to the benign language exception.

In *Estate of Laboy v. Apex Asset Mgmt., LLC*, No. CV 18-10844, 2019 WL 1417249 (D.N.J. Mar. 29, 2019), the District Court for the District of New Jersey found that a plaintiff-debtor failed to present evidence sufficient succeed on its claim that a five-digit number visible through an envelope's glassine window violated § 1692f(8), where the defendant-debt collector "submitted an affidavit attesting that its third-party mailing vendor randomly generated the five-digit number for mailing purposes and the number did not reveal" the alleged debtor's personal identifying or confidential information.  *Id*. at *4.  The Court held that "[u]nlike the visible account number in *Douglass*, a randomly–generated five-digit number for mailing purposes visible on the envelope does not implicate the privacy concerns embedded in the FDCPA as a matter of law."  *Id*.  A different Judge on the same Court reached the same conclusion on similar facts in *Estate of Clements v. Apex Asset Mgmt., LLC*, No. CV 18-0843, 2019 WL 1326885 (D.N.J. Mar. 25, 2019).[22]  And in *Anenkova v. Van Ru Credit Corp.*, 201 F. Supp. 3d 631 (E.D.

---

[21]     It moreover seems unlikely that someone with access to CPA's internal client list would be surprised to learn that the recipient of one of its mailers had a past-due debt.

[22]     In *Estate of Caruso v. Fin. Recoveries*, No. CV 15-7936, 2017 WL 2704088 (D.N.J. June 22, 2017), another Judge on the District Court for the District of New Jersey addressed a barcode and number on the outside of an envelope.  In that case, "the barcode and number simply

Pa. 2016), a Judge on this Court held that a barcode on the exterior of an envelope containing a collection letter did not violate § 1692f(8) where it contained "a unique tracking number used by" the collection agency's third-party mail vendor.  *Id.* at 637.  When scanned, the barcode "reveal[ed] a twenty-five digit sequence of numbers" that contained an "identifier" which "correspond[ed] to where the particular mailing resides in" the third-party mail vendor's data file.  *Id.*  As the Court observed, "[a]ssuming that one could decipher the components of the twenty-five digit code, no prohibited information would be revealed.  The unique identifier, generated and used by [the third-party mail vendor] to locate the returned mail in its data file, does not communicate anything to a third party."  *Id*. at 637-38.

What each of these decisions clearly has in common is the identity of the party that created and used the allegedly prohibited markings:  in each, third-party mail vendors created the markings, which were then used to process and mail the letters pursuant to an agreement between the debt collector and the vendor.  That is to say, the markings were "created by and for" the third-party mail vendor alone.  *Estate of Laboy*, 2019 WL 1417249, at *3.  They were of no importance to the debt collector, as they did not pertain to a debt or to an alleged debtor's status as a debtor.

In light of the above cases, the question the Court faces is how to weigh the distinctions between the types of markings courts have determined do and do not violate § 1692f(8).  On one hand, when compared with those judicial decisions addressing either "account numbers" or "QR" codes that link to account numbers, CPA's "client number" indeed appears relatively

_____

contained a serial number created by [a third-party mailing vendor] for tracking purposes" and did not "reveal any information about the [ ] debtor or his alleged debt."  *Id*. at *4.  The Court determined that these markings did not implicate privacy intrusions, and as a result, the alleged-debtor's estate did not have standing to sue.  *See id.* at *6.

benign:  the number only reveals the identity of a creditor; it reveals nothing specific to an individual debtor, and even the identity of a creditor could only be obtained with CPA's internal client list.  On the other hand, when compared with decisions in which courts have found and applied a benign language exception, CPA's client number differs from the markings examined in a significant way:  the client number was created and used by CPA, not CPA's third-party mail vendor.

After careful consideration, the Court is obliged to conclude that the client number on the mailer received by McRobie "pertain[s] to [McRobie's] status as a debtor and [CPA's] debt collection effort." *Douglass*, 765 F.3d at 304.  For this ultimate reason, and notwithstanding the distinctions between the account numbers examined in *Douglass* (and its progeny) and CPA's client number, the Court finds that CPA's client number is a piece of information the disclosure of which is "'susceptible to privacy intrusions,' even if it does not facially display any 'core information relating to the debt collection.'"  *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 282 (3d Cir. 2019) (quoting *Douglass*, 765 F.3d at 305).  As a result, the display of the CPA's client number is not "benign."  *DiNaples*, 934 F.3d at 282.  Where information is not truly benign, § 1692f(8) must be construed as written—a construction that is violated by the display of the "client number" on the exterior of CPA's mailer to McRobie.

There are several considerations in addition to those already identified that further militate against a determination that CPA's client number is "benign" and therefore subject to an exception to § 1692f(8).

First, it is well recognized that "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to" its ultimate purpose:  eliminating abusive debt collection practices.  *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013).

A strict construction of § 1692f(8) specifically is consistent with a broad construction of the FDCPA generally, one that the display of CPA's client number violates.

What is more, § 1692f(8)'s statutorily-permitted information actually *is* capable of identifying a recipient of CPA's mailer as an alleged debtor.  Section 1692f(8) authorizes the use of "the debt collector's address" on an envelope containing a debt-collection communication.  A simple internet search of the return address on CPA's mailer to McRobie—P.O. Box 802068, Dallas, TX 75380-2068—yields a link to the webpage for CPA's "Contact Center."[23]  From this information one could easily infer that CPA is a debt collector, and the mailer's recipient (whose name and address is clearly visible on the exterior of the mailer) is a debtor.  This potentiality provides additional support for a construction of § 1692f(8) that limits the information displayed on a mailer's exterior to that which is either explicitly authorized or that which is truly benign.  And while this Court is not in a position to formulate a general definition of truly "benign" information, the trend in the case law indicates that the less a debt collector has to do with the creation and use of extraneous information—as opposed to, say, a third-party mail vendor—the more likely it is to be characterized as "benign" under the FDCPA.

In sum, because the display of the "client number" on the exterior of the CPA mailer received by McRobie is an unauthorized display of information that is not disconnected from McRobie's status as a debtor or from CPA's efforts to collect a debt, it is susceptible to privacy intrusions, and thus "implicates a core concern animating the FDCPA—the invasion of privacy." *DiNaples*, 934 F.3d at 279 (quoting *Douglas*, 765 F.3d at 303).  In this way, the client number cannot be said to be truly "benign," and its presence on the exterior of CPA's mailer violates 15

---

[23]     *See* https://www.creditprotect.com/home/solutions/contact-center/

U.S.C. § 1692f(8)'s prohibition on such markings.[24]  CPA's motion for summary judgment as to

Count II of the Amended Complaint is therefore denied, and McRobie's motion as to Count II of

the Amended Complaint is granted.[25]

### 2.. *Violation of 15 U.S.C. § 1692f(7) (Count I)*

Section 1692f(7) of the FDCPA defines "[u]nfair or unconscionable" debt-collection

practices to include "[c]ommunicating with a consumer regarding a debt by post card."  15

U.S.C. § 1692f(7).  Unfortunately, there is little case law addressing the scope or contours of §

1692f(7)'s prohibition; indeed, the Court has found precisely zero cases from this Circuit.  The

Court's analysis therefore begins by reviewing what guidance it can from the text and purpose of

the statute before confronting the arguments of the parties in the context of the factual record.

Section 1692f(7) prohibits communications regarding debts "by post card," however, the

FDCPA does not define the term "post card."  *See* 15 U.S.C. § 1692a.  It is nonetheless clear that

the most important characteristic of what is commonly understood as a "post card" is, for

purposes of the FDCPA, that a message can be mailed without an envelope, the message itself

---

[24]     Additionally, to the extent that CPA asserts the "bona fide error" defense to McRobie's
claim under § 1692f(8), this defense is inapplicable.  *See Daubert v. NRA Grp., LLC*, 861 F.3d
382, 394 (3d Cir. 2017) ("FDCPA violations forgivable under § 1692k(c) must result from
'clerical or factual mistakes,' not mistakes of law." (quoting *Jerman v. Carlisle, McNellie, Rini,
Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010))).

[25]     By virtue of the class members having received the same violative mailer from CPA,
summary judgment as to Count II of the Amended Complaint is entered on behalf of McRobie as
class representative as well as each member of the class.  *See Harlan v. Transworld Sys., Inc.*,
No. CIV.A. 13-5882, 2015 WL 505400, at *4 (E.D. Pa. Feb. 6, 2015) ("This case essentially
turns on a single legal question: whether, as a matter of law, North Shore's Subject Letter
complied with the FDCPA's notice requirement.  This question is common to the Class because,
by definition, all Class Members received the Subject Letter and were victims of a statutory
violation of the FDCPA. The Class Members therefore share identical claims, save for the
possibility that certain Class Members may have suffered actual harm from the violative
Subject Letter."); *see also Stair ex rel. Smith v. Thomas & Cook*, 254 F.R.D. 191, 204 (D.N.J.
2008).

publicly visible. [26]  In this sense, the prohibition on communicating by post card regarding debts is intended to protect against public display of debt-related information that would normally be contained within an envelope.  *See Douglass*, 765 F.3d at 302 ("Section 1692f evinces Congress's intent to screen from public view information pertinent to the debt collection.  *See* 15 U.S.C. § 1692f(7) (prohibiting correspondence by post card).").

Because the "double card" mailer CPA *intended to* (and potentially did) send to McRobie did not display any personal information to the outside world—that is, beyond McRobie's name, address, and the "client number" previously discussed at length—in a manner associated with a traditional "post card," the Court cannot find, nor does either party directly argue,[27] that the double card mailer itself violates § 1692f(7).

With this foundational conclusion in hand, the Court must confront the factual record and the arguments of the parties based thereon.

According to CPA, the record evidence shows that (i) NDSI "placed the letter to [McRobie] in the United States Postal Service mail as a double sealed card which did not reveal the content of the correspondence or any of [her] personal information," Def.'s SOMF ¶ 5; (ii) this correspondence "was a double postcard according to the USPS standards," *id*. ¶ 22; (iii) "[w]hat [McRobie] claims she received in her mailbox was just one portion of the double

---

[26]     The United States Postal Service states on its website the following with respect to post cards:  "Postcards are an inexpensive way to get an immediate message to customers. When they arrive in the mail, there's the message -- no envelope to open!"  https://pe.usps.com/businessmail101?ViewName=Cards.  The website further states that for purposes of postage, a post card must be "[r]ectangular," "[a]t least 3-1/2 inches high x 5 inches long x 0.007 inch think," and "[n]o more than 4-1/4 inches high x 6 inches long x 0.016 inches long."  *Id.*
        Merriam-Webster similarly defines a "postcard" as "a card on which a message may be written for mailing without an envelope and to which a sender must affix a stamp."
[27]     Although McRobie argues that "sending a 'double card' in an attempt to collect a debt which is not enclosed in any type of envelope but instead merely glued together with perforated edges . . . is itself unreasonable," Pl.'s Opp'n. at 15, she cites to no authority for this proposition.

postcard that was sent by [NDSI] – it was not what was transmitted from [NDSI's] office," *id*. ¶ 24; and (iv) CPA "can only speculate that it must have detached during the handling of mail by the USPS," *id*. ¶ 25.  On these facts, CPA effectively makes two arguments as to why it is entitled to summary judgment:  (1) CPA sent McRobie a "double card" mailer consistent with its template for "double card" mailers, which NDSI agreed to print, fold, glue, and mail as designed; as a result, CPA did not "communicate . . . by post card," and whatever McRobie claims she received is not material to the instant analysis; and (2) even if McRobie's claim that she received one half of the "double card" mailer is true and material, CPA is entitled to the "bone fide error" defense because any FDCPA violation was unintentional and CPA maintains reasonable policies and procedures to prevent such violations.  *See* Def.'s Mem. at 10-16; Defendant's Memorandum in Reply ("Def.'s Reply") [ECF No. 74] at 3-7.

In response to these two arguments, McRobie contends that (1) the record facts do not support that NDSI actually placed a "double card" in the mail on CPA's behalf, but rather show only how these mailers are *supposed to be* printed and mailed, and therefore there is insufficient evidence to support CPA's contention that her mailer was actually mailed out as a "double card" mailer; and (2) CPA is not entitled to the bona fide error defense because the evidence does not support that CPA had in place policies and procedures reasonably adapted to avoid bona fide error.  *See* Pl.'s Opp'n. at 12-16.

Notwithstanding her dislike of the "double card" format, *see* Pl.'s Opp'n. at 15, McRobie's argument that CPA is not entitled to summary judgment because the facts do not support that CPA sent McRobie a "double card" mailer, appears to concede, or at least accept, that if CPA's mailer was indeed printed, folded, glued, and mailed as designed—that is, as a "double card" mailer—then there has been no violation of § 1692f(7).  This is consistent with

what the Court has already concluded: the "double card" form does not violate § 1692f(7). And if CPA, through NDSI, [28] mailed a communication in the non-violative, double card format, then it is immaterial that the communication was received as a single card displaying personal information; in this scenario, CPA communicated by "double card" mailer, not "by post card," and there has been no violation.

The ultimate question then, is whether the undisputed facts show that CPA, through NDSI, did or did not place a non-violative, double card communication in the mail. The Court finds that they do not. Rather, there is a genuine factual dispute as to whether the mailer McRobie received was placed into the mail by NDSI on CPA's behalf as a double card mailer, or in the form in which it was received—a single card displaying McRobie's debt-related information. An examination of the factual record makes this clear.

At the outset, the Court acknowledges that McRobie goes too far in arguing that CPA "provides no evidence establishing that it or its vendor actually mailed a 'double card.'" Pl.'s Opp'n. at 13. CPA can point to the deposition testimony of Rachelle Hyde of NDSI and the vendor agreement between CPA and NDSI to show that double card mailers were expected to be, and generally were (as far as CPA knows), printed and mailed in accordance with CPA's template. *See* Deposition of Rachelle Hyde, ("Hyde Dep.") [ECF No. 61-2] at 21:2-8. Similarly, CPA can point to the deposition testimony of its Vice President and Compliance Officer Diane

---

[28]    "[A]n entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *Barbato v. Greystone All., LLC*, 916 F.3d 260, 269 (3d Cir. 2019) (quoting *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000)), *cert. denied sub nom. Crown Asset Mgmt. LLC v. Barbato*, 140 S. Ct. 245, 205 L. Ed. 2d 129 (2019). This was a non-issue in the context of 15 U.S.C. § 1692f(8) because the "client number" was printed pursuant to CPA's template. If, however, a single rather than double card was mailed to McRobie by NDSI in violation of § 1692f(7), CPA is ultimately liable.

Evans to show the absence of complaints about its double card mailers.[29]  *See* Deposition of

Diane Evans ("Evans Dep.") [ECF No. 61-4] at 52:3-21.  A trier of fact could credit this

evidence and find that it was very likely that McRobie's mailer was printed and mailed as it was

designed, that any exposure of her personal information was the result of the conduct of a third-

party (like the postal service), and that there was no FDCPA violation as a result.  On the other

hand, however, McRobie can point to her own testimony that the mailer she received was not in

a form consistent with CPA's double card template, as well as to NDSI's representation that each

mailer is not checked to confirm that it is properly printed, cut, and glued, prior to mailing.  *See*

Pl.'s Resp. ¶ 12; Hyde Dep. at 37:4-6, 39:9-14.  These pieces of evidence together create a

genuine dispute as to whether the mailer received by McRobie was, when placed in the mail, a

non-violative double card mailer, or a communication "by post card" in violation of § 1692f(7).

That is not the end of the inquiry, however, because CPA asserts the "bone fide error"

defense.  If CPA is entitled to this defense in light of the undisputed factual record, the

underlying factual issue of whether a technical violation of § 1692f(7) occurred becomes moot.

The basis for the "bone fide error" defense is found in 15 U.S.C. § 1692k(c), which provides an

exception to the general strict liability of the FDCPA.  Section 1692k(c) states as follows:  "[a]

debt collector may not be held liable in any action brought under this subchapter if the debt

collector shows by a preponderance of evidence that the violation was not intentional and

resulted from a bona fide error notwithstanding the maintenance of procedures reasonably

adapted to avoid any such error."  15 U.S.C. § 1692k(c).  "[T]o avail itself of the defense," a

defendant "will have to establish: (1) the alleged violation was unintentional, (2) the alleged

---

[29]     Although Ms. Evans testified as to the issue of a double card mailer becoming "unglued," the absence of any complaints as to this issue could indicate that no mailers were being improperly printed or glued and placed in the mail in a violative form in the first place.

violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors." *Beck v. Maximus, Inc.*, 457 F.3d 291, 297-98 (3d Cir. 2006). Importantly, the defense "doesn't apply if the violation resulted 'from a debt collector's mistaken interpretation of the legal requirements of the FDCPA.'" *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 393-94 (3d Cir. 2017) (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010)).

McRobie does not argue—nor is there any basis in the record to argue—that any violation of § 1692f(7) was intentional. *See Gebhardt v. LJ Ross Assocs., Inc.*, No. CV 15-2154, 2017 WL 2562106, at *4 (D.N.J. June 12, 2017) ("The intent required by the first prong is the debt collector's intent to violate the FDCPA, and not an intent to communicate with the consumer."). Whether CPA can claim the "bona fide error" defense therefore turns on what the factual record shows with respect to CPA's error being "bona fide," as well as what "procedures" CPA had in place and whether they were "reasonably adapted to avoid" an error. "A bona fide error is 'one that is plausible and reasonable.'" *Id.* (quoting *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 420 (8th Cir. 2008)). Whether an error is "bona fide," as well as whether a defendant has "reasonably adapted" procedures, are objective inquiries. *Gebhardt*, 2017 WL 2562106, at *4.

The Court finds the record sufficient to show by a preponderance of the evidence that if CPA did place McRobie's mailer in the mail as a single rather than double card, its error was "bona fide." As far as CPA knows, McRobie's is the first complaint it has received regarding one of its "double card" mailers. *See* Affidavit of Lisa Duan ("Duan Aff.") [ECF No. 61-1] ¶¶ 18-21; Evans Dep. at 52:9-13. Moreover, it is plausible that given the number of mailers created and mailed by NDSI on behalf of CPA, *see* Hyde Dep. at 34:14-15, a single mailer might not

have been printed, glued, and mailed per CPA's template but inadvertently as one half of a double card.

The final inquiry pertains to the third element of the bona fide error defense:  whether CPA had procedures reasonably adapted to avoid the error of which it has been accused.[30]  CPA contends that it does.  *See* Def.'s Mem. at 14.  Specifically, CPA states that "it does not authorize that any correspondence sent to debtors in which the relevant account information is visible without unsealing or opening such correspondence," and that  it "employs an outside vendor who has agreed to mail sealed letters in a manner that does not disclose the contents of the letter."  *Id.* In opposition, McRobie asserts that "CPA has failed to show that it maintained procedures reasonably adapted to avoid a bone fide error.  CPA produces no written policy regarding its purported procedures."  Pl.'s Opp'n. at 14.  Moreover, McRobie argues that even if it attempted to maintain appropriate procedures, "in practice CPA does not comply with those stated procedures.  First, sending a 'double card' in an attempt to collect a debt which is not enclosed in any type of envelope . . . is itself unreasonable."  Pl.'s Opp'n. at 15.  "Second," McRobie contends, "entirely outsourcing its printing and mailing to an outside vendor . . . that does not check to see if the postcards it prepares . . . are printed, cut and glued properly before mailing out" is unreasonable.  *Id.*

In the Court's view, CPA has not presented evidence of its procedures that is so overwhelming as to settle the issue; rather, a genuine factual dispute exists.  CPA's Vice President of Client Operations, Lisa Duan, attests that CPA "does not authorize that any

---

[30]    "The Supreme Court has explained that 'procedures reasonably adapted to avoid any such error' may be read to apply to 'processes that have mechanical or other "regular orderly" steps to avoid mistakes—for instance, the kind of internal controls a debt collector might adopt to ensure its employees to do not communicate with consumers at the wrong time of the day.'"  *Gebhardt*, 2017 WL 2562106, at *4 (quoting *Jerman*, 559 U.S. at 587).

correspondence sent to debtors in which the relevant account information is visible without unsealing or opening of such correspondence," and that "[t]o the contrary, it has a policy in place of not communicating in such a way that third parties can decipher the content and nature of communications."  Duan. Aff. ¶¶ 22-23.  Ms. Duan further states that "[t]hese policies apply to both written and oral communications and are included in CPA's training of its employees," and that "[t]o the extent CPA's correspondence arrived in a form that allowed its contents to be displayed, or the nature of its sender to be known, it occurred in spite of reasonably adapted policies and procedures designed to avoid such a mistake."  *Id.* ¶¶ 24, 28.  Additionally, Diane Evans, CPA's compliance officer, testified at her deposition that CPA's files are "seeded" with employee names on a regular basis, whereby employees receive debt collection communications in the mail, so that CPA can test the quality of those communications.  *See* Evans Dep. at 34:6-25, 35:1-18.  However, McRobie contends, and it does not appear disputed, that CPA has no written procedures for error detection.  *See* Pl.'s Opp'n. at 14.  McRobie further points to the deposition testimony of Rachelle Hyde of NDSI that NDSI only checks for the correct number of mailers that it prints and sends, not their quality.  *See id.* at 15 (citing Hyde Dep. at 36-39).  This competing evidence creates a factual dispute.

Because there is a dispute as to whether CPA maintained procedures reasonably adapted to prevent the inadvertent mailing of only one half of a "double card" mailer, a jury must make the ultimate determination.  As a result, CPA's entitlement to the bona fide error defense if in fact it did violate § 1692f(7) is, similar to the question of whether a violation occurred in the first place, a question of fact that must be resolved by a jury.  *See, e.g., Regan v. Law Offices of Edwin A. Abrahamsen & Assocs., P.C.*, No. CIV.A. 08-5923, 2009 WL 4396299, at *10 (E.D. Pa. Dec. 1, 2009) ("Because there are factual disputes . . . the court cannot determine at the

summary judgment stage whether [the debt collector's] procedures were 'reasonably adapted to avoid . . . error.'"); *Romano v. Williams & Fudge, Inc.*, 644 F. Supp. 2d 653, 658 (W.D. Pa. 2008) ("There remains genuine issues of material fact surrounding what policies and procedures existed to avoid [ ] errors and whether the policies and procedures in place were sufficient under the circumstances of this case.").

**VI.     CONCLUSION**

For the reasons discussed above, the Court concludes that McRobie is entitled to summary judgment as to Count II of the Amended Complaint based upon the display of the "client number" on the exterior of mailer she received from CPA.  Her motion for summary judgment is therefore granted, and CPA's motion for summary judgment as to Count II is denied. As to Count I of the Amended Complaint, there exists a genuine dispute of material fact regarding (1) whether CPA, through NDSI, in fact placed only a portion of its double card mailer into the mail, thereby violating § 1692f(7)'s prohibition, as well as (2) if such violation occurred, whether CPA had procedures in place reasonably adapted to avoid the error McRobie alleges, thereby entitling it to the "bona fide error" defense under § 1692k(c).  Consequently, Count I of the Amended Complaint must be put before a jury, and CPA's motion for summary judgment as to this count is denied.

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge