UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH MCROBIE, on behalf of       :
herself and all others similarly situated, :
                    Plaintiff,        :
                                      :
            v.                        :    No. 5:18-cv-00566
                                      :
CREDIT PROTECTION ASSOCIATION,        :
                    Defendant.        :

**O P I N I O N**

**Parties' Motion for Preliminary Approval of Class Action Settlement Agreement,
ECF No. 88—GRANTED**

**Joseph F. Leeson, Jr.**                                **November 20, 2020**
**United States District Judge**

## I.   INTRODUCTION

This is a class action[1] commenced for the alleged violation of two provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("the FDCPA"). Plaintiff Elizabeth McRobie, an alleged debtor, contends that a mailer she received from Defendant Credit Protection Association ("CPA"), a debt-collection agency, violated the FDCPA both in the mailer's form and substance. *See* Plaintiff's Amended Complaint ("Am. Compl.") [ECF No. 38] ¶¶ 42-49. The parties previously cross-moved for summary judgment, and in an Opinion and Order issued on March 11, 2020, this Court denied CPA's motion for summary judgment as to Counts I and II of the Amended Complaint, and granted Plaintiffs' partial motion for summary judgment, which

---

[1] Class certification was granted only as to Count II of the Amended Complaint. *See* ECF No. 43.

sought judgment as to only Count II.  *See* ECF Nos. 77-78; *McRobie v. Credit Prot. Ass'n*, No. 5:18-CV-00566, 2020 WL 1181974 (E.D. Pa. Mar. 11, 2020).

Since the Court's March 11, 2020 Opinion and Order, the parties have notified the Court that they have reached a settlement in this matter.  *See* ECF No. 85.  Currently pending before the Court is the parties' joint motion[2] for preliminary approval of the class action Settlement Agreement.  *See* ECF No. 88.  For the reasons set forth below, the parties' motion for preliminary approval of the Settlement Agreement is granted.

## II. BACKGROUND

Pursuant to this Court's April 2, 2019 Opinion and Order on Plaintiff's motion for class action certification, the class in this case, which was only certified as to Count II[3] of the Amended Complaint, is defined as follows:  "All natural persons residing in Pennsylvania, New Jersey and Delaware to whom Defendant CPA mailed a postcard, substantially similar to the Postcard sent to Plaintiff, in an attempt to collect a debt, where the postcard was not returned as undeliverable."  ECF No. 43.  Plaintiff's counsel was appointed class counsel.  *Id*.  The parties' memorandum in support of the instant motion states that there are an estimated "33,705 individuals in the Settlement Class.  Of those 33,705 individuals, three individuals have validly excluded themselves from the Class and are no longer Class Members: Paula Aviles, Edward C. Bell, and Sonja Sharmayne Freeman."  Mem. at 4 (citation omitted).

---

[2] Although the motion is titled "Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement," ECF No. 88 at 1, the memorandum in support states that "[t]he Parties now present th[e settlement] terms for the Court's preliminary approval."  Memorandum in Support ("Memo"), ECF No. 88-2, at 3.  In the Court's view, the motion is more properly considered a joint motion than an unopposed motion by Plaintiff.

[3] Count II of the Amended Complaint alleges a violation of 15 U.S.C. § 1692f(8), which prohibits use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails."  The violation was the result of the display of a numerical "client number" on the exterior of CPA's mailer.

The terms of the parties' proposed Settlement Agreement call for the establishment of a $40,000, non-reversionary settlement fund.  *See* Settlement Agreement, ECF No. 89, ¶ 5.1. Monies not distributed to class members will be paid as *cy pres* to a party to be agreed upon by both McRobie and CPA, as well as the Court.  *See id*. ¶ 12.2; Mem. at 5.  In their memorandum in support of the motion, the parties aver that the proposed Settlement Agreement

> is an excellent result for the Class. The FDCPA caps the amount of damages available to a class to an amount "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2). Defendant has argued that it has a negative net worth and "there is no class recovery in light of the negative net worth." (Doc. No. 48 at pp. 5-7). It later produced an expert report asserting that its net worth was just under $1.25 million based on audited financial statements. (Lemberg Decl. ¶ 9). Plaintiff disputed this figure through her own expert. Accordingly, if Defendant succeeded in establishing its net worth valuation, the most the Class would be entitled to is approximately $12,500. By contrast, the Settlement Fund provides for the payment of $40,000 to the Class – more than three times as much relief as the maximum available statutory class damages if Defendant succeeded in establishing its net worth valuation.

Mem. at 4-5.  The Settlement Agreement calls for payment to be made by check, sent to eligible class members who have submitted timely claim forms via first-class mail; the checks will be valid for 120 days.  *See* Settlement Agreement ¶ 12.1; Mem. at 6.

Apart from settlement of the class claims, the Settlement Agreement calls for CPA to pay Elizabeth McRobie $1,000 to settle her individual claims.  *See* Settlement Agreement ¶ 6.2; Mem. at 7.  The Settlement Agreement also calls for CPA to fund an incentive award of up to $5,000, subject to the Court's approval, to compensate Ms. McRobie for her time and services as class representative.  *See* Settlement Agreement ¶ 6.3; Mem. at 7.  As for attorneys' fees, the Settlement Agreement states that CPA shall pay up to $149,000.00 in attorneys' fees, costs, and expenses to class counsel, subject to approval of the Court, which amount includes expenses incurred in providing notice to the class and other expenses incurred relative to class administration.  *See* Settlement Agreement ¶ 6.1; Mem. at 7.  The Settlement Agreement

provides CPA with a full release from liability against any claims stemming from the factual predicate of this case.  *See* Settlement Agreement ¶ 17.1; Mem. at 7.

### III. APPLICABLE LAW:  PRELIMINARY JUDICIAL REVIEW OF A PROPOSED CLASS ACTION SETTLEMENT

"Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make 'a preliminary fairness evaluation.'"  *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014) (quoting Ann. Manual Complex Lit. § 21.632 (4th ed.)).[4]  Only if the proposed settlement is found to be preliminarily acceptable does a court direct notice to all class members who would be bound by the settlement, so that they may have an opportunity to be heard, object to, and potentially opt out of the settlement.  *In re Nat'l Football League*, 961 F. Supp. 2d at 714.

This preliminary approval process operates under the Federal Rules of Civil Procedure as follows.  Rule 23(e)(1)(B) provides that a court may only give notice to class members regarding a settlement if the parties can show (i) the terms of the proposed settlement would be likely to satisfy Rule 23(e)(2), and (ii) certification of the class has taken place or the standard for certification would be likely to be met.  Rule 23(e)(2), in turn, states that a proposed settlement

---

[4]   Section 21.632 of the Manual for Complex Litigation provides that "[r]eview of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."  Through the submissions of the parties as part of the instant motion, as well as documents that are part of the comprehensive docket in this case, the Court has the information it needs to make an informed preliminary determination as to the fairness, reasonableness, and adequacy of the proposed Settlement Agreement.

agreement may only be approved by a court if the court finds it to be fair, reasonable, and adequate, after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

Preliminary approval of a proposed class action settlement is not binding on the Court and is generally granted unless a proposed settlement is obviously deficient. *Jones v. Commerce Bancorp, Inc.*, No. 05-5600, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007); *see In re Nat'l Football League*, 961 F. Supp. 2d at 714 ("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered, and the court is required to determine whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.'" (quoting *Thomas v. NCO Fin. Sys.*, No. 00-5118, 2002 WL 1773035, at *5 (E.D.Pa. July 31, 2002))). "The Third Circuit has observed that there is 'an overriding public interest in settling class action litigation, and it should therefore be encouraged.'" *Lupian v.*

*Joseph Cory Holdings*, No. 16-CV-5172, 2019 WL 3283044, at *5 (D.N.J. July 22, 2019) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).

## IV.   ANALYSIS

### A.   Preliminary Approval of the Terms of the Settlement Agreement

As an initial matter, the Court observes, as it has previously noted, that the class in this case has already been certified pursuant to Federal Rule of Civil Procedure 23.[5]  *See* ECF Nos. 42-43.  One of the two prerequisites for preliminary approval and notice to be sent to the class members about the proposed settlement has therefore been satisfied.  *See* FED. R. CIV. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.").  The Court then turns to consider the four factors of Rule 23(e)(2) in determining whether the proposed Settlement Agreement is fair, reasonable, and adequate.  As discussed below, the Court finds the Settlement Agreement is indeed, fair, reasonable, and adequate.

#### 1.   *Whether McRobie and class counsel adequately represented the class*

The Court begins with whether the class representative here and class counsel adequately represented the class.  As the parties' motion observes, this Court previously found that McRobie's interests did not conflict with the interests of potential class members, and counsel for McRobie, Sergei Lemberg, had extensive experience in litigating FDCPA cases, and consequently, McRobie and her counsel would adequately represent the interests of the class.

---

[5]   This observation also satisfies the requirement that a "judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."  Ann. Manual Complex Lit. § 21.632 (4th ed.).

*See* ECF No. 42 at 9-12.  Mr. Lemberg's qualifications are reaffirmed in his affidavit, submitted with the parties' motion for preliminary approval of the Settlement Agreement.  *See generally* ECF No. 88-4.  The Court moreover agrees with the parties' motion that McRobie and her counsel have, since being granted class certification, continued to vigorously prosecute her and the class's claims, up through summary judgment, on which they were successful.  *See* ECF Nos. 77-78.  Indeed, the Court found the quality of advocacy and work product of all counsel in this case generally to have been above par.  *See In re Ikon Office Sols., Inc. Sec. Litig.*, 209 F.R.D. 94, 103 (E.D. Pa. 2002) ("[P]laintiffs' counsel clearly possess the expertise to litigate this matter effectively, as evidenced by the quality, timeliness and professional nature of their work before this court. The case has been vigorously litigated, from the filing of the initial complaint and its two subsequent amendments, through numerous discovery battles, a motion to dismiss, the several stages of argument concerning class certification, and the motions for summary judgment . . . .").  Subsequently, class counsel was able to reach a settlement that appears quite favorable to McRobie and the class.  The Court therefore finds that this factor has been sufficiently satisfied for the preliminary approval inquiry.

  2.    *Whether the Settlement was the result of arm's length negotiations*

Next, the Court must determine whether the proposed Settlement Agreement was negotiated at arm's length.  Black's Law Dictionary defines "arm's length" as "[o]f, relating to, or involving dealings between two parties who are not related or not on close terms and who are presumed to have roughly equal bargaining power."  Black's Law Dictionary (11th ed. 2019).  The Court finds that the negotiations that led to the Settlement Agreement here were conducted by counsel who by all accounts had equal bargaining power.  As the parties' motion points out, this action was litigated aggressively and over an extended period of time.  Counsel on both sides

are experienced and highly regarded attorneys. Additionally the proposed Settlement Agreement was the result of, at least in large part, an extended settlement conference overseen by an experienced Magistrate Judge on this Court. *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 475 (E.D. Pa. 2007) ("[A]s the extensive docket in this case demonstrates, class counsel vigorously prosecuted this case and, under the supervision of Magistrate Judge Hart, entered into arm's length negotiations in order to reach the Settlement."). For these reasons, the Court finds that the proposed Settlement Agreement was the result of negotiations that were undertaken at arm's length.

### 3. *Whether the relief provided for is adequate*

Thirdly, the Court must determine whether the relief provided for the class by the proposed Settlement Agreement is "adequate," taking into account (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed award of attorney's fees, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(3).

Taking the four sub-factors one by one, the Court first finds that the costs, risks, and delay of trial and appeal in this case weigh in favor of a finding that the relief provided is adequate. As the parties' motion points out, in light of the FDCPA's cap on damages, *see* 15 U.S.C. § 1692k(a)(2)(B), proceeding to trial where CPA could have succeeded on its valuation theory risked a cap on damages for the entire class of $12,500. *See* Mem. at 12-13. Moreover, it is notable that CPA has represented that it recently ceased operations, raising significant risks that a trial and appeal could jeopardize its ability to pay any future judgments. *See id.* at 15. This sub-factor therefore weights in favor of a finding of adequacy.

The Court also finds that the direct mail of notice to class members, in combination with a claims website as proposed in the Settlement Agreement, provides a sufficiently effective method of distributing relief to the class here. This sub-factor also weighs in favor of a finding of adequacy.

Turning to attorneys' fees, including the timing of payment, the Court defers a finding as to the propriety of the amount of requested attorneys' fees in this case—up to $149,000, inclusive of costs and expenses—but notes that counsel will request approval of fees thirty (30) days prior to the deadline to file objections. *See* Mem. at 16. Moreover, attorneys' fees, costs, and expenses, will be paid separate and apart from the fund which will pay claims to class members. The Court therefore finds that these aspects of the proposed Settlement Agreement weigh in favor of a finding of adequacy.

"Regarding the fourth sub-factor under Fed. R. Civ. P. 23(e)(2)(C)," the Court agrees with the parties' motion that "the only agreement required to be identified under Rule 23(e)(3) is the Settlement Agreement Plaintiff submits to the Court. There are no other agreements at issue." Mem. at 18.

In consideration of the above four sub-factors, the Court concludes they weigh in favor of a finding that the relief provided for in the proposed Settlement Agreement is indeed adequate.

### 4. *Whether the proposed Settlement treats the class equally*

Finally, as to the fourth Rule 23(e)(2) factor, the Court finds that the proposed Settlement Agreement treats the class equally. As the parties point out, "[e]ach class member may submit a claim form and claim an equal share of the Settlement Fund. No group is treated differently. Further, each class member may object in the same fashion. Because there is no disparate

treatment between members, the settlement merits approval." Mem. at 18. The Court is in agreement.

### B. Approval of the Parties' Proposed Notice and Plan

Since the parties have shown that the class has been previously certified and the proposed Settlement Agreement satisfies the Rule 23(e)(2) factors, Federal Rule of Civil Procedure 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The parties ask the Court to approve their proposed class notice and notice plan, which are attached as exhibits to their motion for preliminary approval. *See* Mem. at 20.

The Court has reviewed (1) the proposed notice forms (both short and long), (2) the proposed claim form, (3) the proposed plan, including (a) the direct mailing of the short form notice to class members, (b) the method of maintaining and updating class members' addresses as described, (c) the use of the dedicated claim website, (d) the maintenance of a dedicated telephone number to provide information to class members, and (e) the timeline for disseminating notice, for filing applications for attorneys' fees and costs, for filing the incentive award application, and for filing of objections. Upon this review, the Court finds each of these proposals to be reasonable and appropriate under the applicable Rule 23(e) standard.[6] *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 225 (D.N.J. 2005) ( "Notice of a proposed settlement under Rule 23(e) must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the

---

[6] In light of the current COVID-19 pandemic and its affect on the administration of the courts in this district, the Court is reluctant at this time to schedule the final fairness hearing and the deadlines that are dependent on the date of that hearing.

Fairness Hearing." (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997), *aff'd sub nom. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998))); *see also In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*, 269 F.R.D. 468, 482 (E.D. Pa. 2010) ("[D]irect mailing of the type undertaken in this case has been found to satisfy Rule 23. . . . The notice program also made extensive use of the Internet. First, CertainTeed created a website [ ] where putative class members could access information about the class action, including the long and short form claim forms and other documents relating to the litigation."). As a consequence, the Court grants the parties' request and approves their proposed notices, claim form, and notice plan generally.

### V. CONCLUSION

For the reasons set forth above, the parties' joint motion for preliminary approval of the proposed Settlement Agreement, as well as for approval of their proposed class notices and notice plan, are granted.

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
